UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| JEFFREY HOWARD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 06-136-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOHN REES, Commissioner, et al., | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the Petitioner's motions to amend his petition [Record No. 6] and for the issuance of a writ of habeas corpus. [Record No. 11] for the reasons discussed below, this motion will be granted and the Respondent will be given time to file a response.

BACKGROUND

The instant action was initiated, *pro se*, on March 29, 2006, by Jeffrey Howard, an individual presently confined by the Kentucky Department of Corrections ("KDC") at the Bell County Forestry Camp in Pineville, Kentucky. Naming both Kentucky and Tennessee authorities as Respondents, the Petitioner claims that Tennessee authorities violated his rights under the Interstate Agreement on Detainers ("IAD"). He seeks to have the Tennessee charges dismissed and the detainers removed.

Upon screening the petition, the Court issued an Order summarizing Howard's allegations and supporting attachments as follows:

> The Petitioner asserts that on May 7, 2004, two Tennessee courts lodged detainers with Howard's custodians, the KDOC. Both detainers stated that there were

-1-

> outstanding state charges against him. One was from Overton County, Tennessee (Attempt to Manufacture Methamphetamine and Possession of Drug Paraphernalia; Exhibit 1). The other charge was from Warren County, Tennessee (Possession of Explosive Material).
>
> Petitioner Howard alleges that, consistent with the procedures required under the IAD, he signed all proper forms supplied to him by the warden in order to request disposition of the untried charges. He has also provided copies of these documents, which the warden sent to the respective courts on June 15, 2004 [Exhibits. 3 & 4]. However, after executing the forms, he claims that he did not hear anything from Tennessee within the 180 days which, under the IAD, the state is given to dispose of such charges after the prisoner makes the demand for disposition. As a result, Howard began to seek relief from several sources.
>
> Howard asserts that after 9 months had passed, he filed motions to dismiss the charges in the state courts. According to Howard, these motions remain pending. He claims that he also contacted a KDOC official who confirmed by memorandum of November 16, 2005, that she had called the clerks of the Overton and Warren County Courts and confirmed that the motions were still pending in those courts. However, "[n]o further information was available." [Exhibit 5] The Petitioner also includes copies of other efforts to dispose of these charges, including a January 14, 2006, memorandum which he wrote to the KDOC's IAD Administrator, and a February 16, 2006, letter to the KDOC Commissioner Rees. *Id.*
>
> On March 16, 2006, Howard filed this petition asking that this Court direct dismissal of pending charges and removal of the detainers.

[Record No. 3 at pp. 2-3].

In the above-quoted Order, the Court dismissed some of the Respondents and ordered service of the petition on the remaining named Respondents, *i.e.*, the Commissioner of Kentucky's Department of Corrections, John Rees, and the two Judges presiding over the Tennessee charges still pending against Howard. Shortly thereafter, the Petitioner moved to amend the petition to name Michael Ferguson, Warden of the Bell County Forestry Camp, as the proper Respondent.

The record reflects that the named Tennessee parties, Judges Ross and Sells, were served by certified mail on April 28, 2006. On May 22, 2006, KDOC Commissioner Rees filed a waiver of service, as he was permitted to do pursuant to the terms of the Court's Order of April 25, 2006.

When no Respondent had filed an Answer three months later, however, the Petitioner filed the second motion which is before the Court today (i.e., a motion for the writ to issue) based upon the Respondents' failure to file any responsive pleadings. After a period of abeyance, KDOC Commissioner Rees has filed a Response to this motion, but the Tennessee Respondents have not appeared.

## MOTIONS

The Petitioner's motion to amend will be granted, as it appears that Ferguson is now the Petitioner's custodian. *See* Fed.R.Civ.P. 15; 28 U.S.C. §2242. Regarding the Petitioner's motion for the writ to issue, based upon the failure of the Respondents to respond in a timely manner, Howard reveals that partial relief may have been achieved outside the record. He states that "Rees' agents" have notified him that the Warren Circuit Court charges had been dismissed and the corresponding detainer lifted. However, he seems not to believe it, as he has specifically requested that the Court enter Orders directing both of the Respondent Judges to dismiss all outstanding charges against him and directing Respondent Rees to remove the corresponding detainers.

In the sole response in the record, Commissioner Rees admits that the IAD forms were properly filed and the requisite 180 days for Tennessee to act on them had passed. As to the Petitioner's entitlement to dismissal of the charges, however, Rees states that the KDOC has "no position," because, regardless, there will be no effect on the sentence Howard is currently serving. The Petitioner will not be eligible for release from his Kentucky sentence until June of 2007.

## DISCUSSION

Admittedly, there is little case law on the situation presented here, *i.e.*, a prisoner in the custodial/sending state files the proper IAD paperwork demanding resolution of charges in another/charging state (18 U.S.C.App. 2); the IAD's 180 days for the charging state to bring him to trial pass with no action by the charging state; the prisoner, therefore, is entitled to dismissal of the charges under the IAD, Article III(a); but the charging state does not dismiss the charges or authorize the lifting of its detainer.

As this Court has written earlier in this case and in *Tungate v. Thoms*, 199 F.Supp.2d 608 (E.D. Ky. 2002), *affm'd in relevant part, vacated in part*, 45 Fed.Appx. 502 (6th Cir. 2002), the IAD does not explicitly grant authority to courts in the sending/custodial jurisdiction to render a detainer invalid or to dismiss another jurisdiction's charges underlying the detainer. *Id*. at 620. Authority to render a detainer invalid and to dismiss the underlying charges is afforded to the charging – not the sending – jurisdiction. *Id*. (citing IAD Articles III(d); IV(e); V(c)). In *Tungate*, the challenged charges had recently been dismissed and the detainer removed when the

petitioner came to this Court. Thus, there was no longer a live case or controversy. Therefore, dismissal of Tungate's case offers little in precedential value today.

Two cases do provide some guidance, however. This Court has already noted that there is authority in this district for a sending jurisdiction to quash a detainer when the petitioner's speedy trial rights have been violated by the charging state, *Schofs v. Warden, FCI, Lexington*, 509 F. Supp. 78 (E.D. Ky. 1981). *Schofs,* in turn, relies upon the Supreme Court's holding in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973).

In *Braden*, an Alabama prisoner brought a §2241 suit in the United States District Court for the Western District of Kentucky, on the grounds that: (1) a state court in that district, which had charges pending against him for three years, should dismiss the charges for its failure to bring him to trial timely; and (2) the Kentucky detainer filed in Alabama should be lifted. The federal court granted the writ, but the Sixth Circuit reversed, directing dismissal of Braden's petition on the ground that a state remote from the prisoner's state of incarceration lacked jurisdiction over a §2241 petition.

The *Braden* Court wrote that it "granted certiorari to resolve a sharp conflict among the federal courts on the choice of forum where a prisoner attacks an interstate detainer on federal habeas corpus." *Id*. at 488. It first noted that the petitioner had satisfied two habeas prerequisites, *i.e.*, he was "in custody," and he had been refused dismissal of the charges by the Kentucky courts, thereby exhausting the charging state's judicial remedies. Thus, the Court held that the federal court in Kentucky had jurisdiction to address the merits of Braden's §2241 claim that the state had violated his right to a speedy trial.

The Court also noted that:

> Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement. But as we have made clear above, that forum will not in the ordinary case prove as convenient as the district court in the in the State which has lodged the detainer. Where a prisoner brings an action in the district of confinement attacking a detainer lodged by another State, the court can, of course, transfer the suit to a more convenient forum. 28 U.S.C. 1404(a). *Hoffman v. Blaski*, 363 U.S. 335 (1960).

*Braden*, 410 U.S. at 499 fn.15.

In the present case, the Petitioner has brought his action not in the charging court but in the court where he and his custodian are located. Consistent with *Braden* and its rationale, this forum is not the most convenient. Instead, it would be more convenient for this action to continue in Tennessee where the charges are pending and where persons have the authority to dismiss the charges. Although he is meets the "in custody" requirement, (unlike Petitioner Braden), the Petitioner here has not alleged that he exhausted his judicial remedies in Tennessee.

In *Schofs*, the court was faced with a similar factual situation. Petitioner Schofs was imprisoned in Kentucky,[1] with a detainer lodged against him from another state (i.e., Connecticut). The charging state had not dismissed the charges underlying the detainer when he brought the petition for habeas relief. The court first examined whether the Petitioner had satisfied the several prerequisites to suit before it would reach the merits of the petition. First, with regard to removing[2] the detainer, the Court found that prior to filing the habeas action, the

---

[1] The sending/custodial authority was not Kentucky, but federal, as the Petitioner was in the custody of the Bureau of Prisons in Kentucky in service of a federal sentence.

[2] The Petitioner's sought to "quash" the Connecticut detainer.

Petitioner had exhausted the administrative remedies (both the prison's administrative remedies and those under the IAD).

With regard to obtaining a dismissal of the underlying charges for the violation of the IAD, the State of Connecticut had intervened in the *Schofs* case and contended that the Petitioner was required to exhaust Connecticut's judicial remedies prior to this Court's consideration of his entitlement to habeas relief. Citing *Braden*, this Court agreed with Connecticut and originally granted the petitioner 90 days to initiate proper proceedings in either the Connecticut courts or the United States District Court for the District of Connecticut.

However, soon thereafter, the Connecticut Court Clerk informed Schofs that (1) there were no active, pending cases against him in that state court; and (2) "no action would be taken at present on his motion for the dismissal of all pending charges or warrants." *Schofs,* 509 F.Supp. at 81. In light of these developments, this Court found that the Petitioner had "properly exhausted all the requisite avenues of state court action," and therefore addressed the merits of his claim. *Id.* The Court granted the motion to quash Connecticut's detainer; cancelled Schofs' request for final disposition and held it for naught; and directed the Petitioner's custodian to report within five days whether Schofs was being held for any reason other than the quashed detainer. *Id.* at 82-83.

Here, Petitioner Howard appears to have exhausted the detainer through the KDC administrative process, and the KDC has supported his claim that he filed the proper paperwork to exhaust the IAD's administrative remedies. If the Court concludes that Howard has also exhausted the judicial remedies in Tennessee, he may be entitled to the relief granted Shofs.

However, Tennessee has not intervened in this action, nor has either of the named Respondents in Tennessee made an appearance in this action.

The record consists of the Petitioner's and the KDOC Commissioner's allegations and attached documents revealing only that after he fulfilled the IAD procedures, the entire 180 days for a trial ran without hearing from Tennessee; the Petitioner then filed motions/petitions for dismissal of the charges in the respective courts; and personnel at Howard's prison later called the court clerks, who stated that the motions had been filed but "no action has been taken." Additionally, the record includes return receipts showing service of the original documents on the respective judges by mail. Unlike the situation in *Braden* where the charging state's courts had explicitly rejected the Petitioner's state actions requesting dismissal of the charges, and unlike the state court in *Schofs* which intervened in the habeas proceeding where he was incarcerated, Tennessee's position is unknown.

Perhaps one of the judges who has been named a Respondent has dismissed the charges before him[3] *sua sponte*. The lack of a response in the record from either of the judges may be based upon their evaluation that this Court does not have personal jurisdiction over them, consistent with due process and *International Shoe v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) and its progeny. Conversely, they may be confident that a distant state would ordinarily not interfere with another state's criminal proceedings.

---

[3] This speculation is based upon the Petitioner's allegation the he received "notification" that the Warren Circuit Court's detainer had been removed and the charges dismissed. Record No. 11.

Further, there are practical matters of which the Court is aware. The Warren and Overton County Court Judges presumably reside in Tennessee and the federal court would have personal jurisdiction over them; any dismissal must be by their courts; any prosecution would also take place there, presumably with local witnesses and other evidence. Should the Court transfer this action to the Tennessee federal courts, the issues would be split, Warren County being in the Eastern District of Tennessee and Overton County being in the Middle District of Tennessee.

For these reasons and in the interests of comity, the Court will not grant the relief requested on the present state of the record. The question for this Court now is the best way for the Petitioner to judicially exhaust his claim in Tennessee or otherwise obtain the non-responding Tennessee authorities' position in the record. Having considered the matter, the Court is persuaded to follow procedure used by this Court earlier in *Schofs*.

Consistent with the foregoing, the Court will deny the Petitioner's motion for the writ at this time; however, the Court will retain jurisdiction over this habeas proceeding and grant the Petitioner 90 days in which to initiate appropriate proceedings in the Tennessee courts, be they mandamus or state habeas or other proceedings as provided under Tennessee law. The Petitioner must fully exhaust his available state remedies or prove the futility of doing so. *Rose v. Lundy*, 455 U.S. 509 (1982). The state's highest court must have an opportunity to review the claims. *Castille v. Peoples*, 489 U.S. 346 (1989).

## CONCLUSION

Accordingly, the Court being advised, it is hereby

**ORDERED** as follows:

(1) The Petitioner's motion to amend to name Michael Ferguson as the proper Kentucky Respondent [ Record No. 6] is **GRANTED**.

(2) The Clerk of the Court is directed to forward by certified mail, return receipt requested, one copy of the petition, the April 25, 2006 Memorandum Opinion and Order, and this Memorandum Opinion and Order to the Office of General Counsel for the Kentucky Department of Corrections, Frankfort, Kentucky. General Counsel shall have ten (10) days from the date of entry of this Order to complete and file a notice of waiver of service for Warden Michael Ferguson.

(3) Any answer to the petition shall be filed no later than 60 days after the Kentucky Respondent's notice of waiver of service is filed.

(4) If no waiver is filed within the 10 days from the date of entry of this Order, then the Clerk of the Court is directed to forward by certified mail, return receipt requested, one copy of the petition, the April 25, 2006, Memorandum Opinion and Order, and this Memorandum Opinion and Order to the Warden Michael Ferguson; upon this contingency, the answer shall be filed no later than 20 days after service of summons.

(5) The Petitioner's motion for issuance of the writ [Record No. 11] is **DENIED** at this time. This denial is without prejudice to his right to bring another such motion at a later date.

(6) The Petitioner is granted 90 days from the date of the entry of this Order in which to initiate legal proceedings in the appropriate Tennessee court(s); and within 10 days thereafter, he shall file into the instant record (a) a certification of the date upon which he initiated the state

proceeding(s) and (b) a copy of the document(s) which he filed in the Tennessee state court(s) on that date.

(7) The Petitioner shall also file in this record a copy of any document which he has already received or may hereafter receive showing that either the Overton County Court or the Warren County Court has dismissed the charges against him.

(8) Upon the passage of 100 days, if the Petitioner has not complied with paragraph (6) above, the Clerk of the Court shall notify the Pro Se Office. The Petitioner is on notice that his failure to comply with paragraph (6) may be grounds for the Court to dismiss this cause of action.

This 20th day of September, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge